IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANICE A. RICHBURG              :       CIVIL ACTION
                                :
        v.                      :
                                :
PALISADES COLLECTION LLC,       :
et al.                          :       NO. 07-7

MEMORANDUM

Dalzell, J.                                    January 28, 2007

        Plaintiff Janice A. Richburg sued defendants Palisades

Collection, LLC, ("Palisades") and Wolpoff & Abramson, LLP,

("Wolpoff") in this putative class action for allegedly filing a

lawsuit against her to collect a consumer credit card debt after

the statute of limitations for such an action had run.  Richburg

now moves for class certification, and the defendants move for

summary judgment.  We shall resolve these motions in the order

just stated.


I.  **Factual Background**

        Richburg bought a computer from Gateway in the summer

of 2000.  Def.'s Mem. Opp. Cert. Ex. C. at 82.  In October of

2000, she fell behind on her payments.  Id. Ex. C at 109-10.

During a phone conversation between Richburg and a Gateway

representative in January of 2001, she stated that someone had

stolen the computer and she could no longer make her payments on

it because she had been laid off from her job.  Id. at 134-36.
Richburg's debt to Gateway went into default on February 3, 2001.
Pl.'s Cert. Mem. Ex. A ¶¶ 10, 11, 24, 25.  Gateway assigned this
debt to Palisades, who hired Wolpoff to collect it through legal
action.  See id. Ex. C.

        Throughout 2003 Palisades attempted to contact Richburg
concerning her debt.  Def.'s S.J. Mem. Ex. E.  On February 27,
2003, a Palisades representative at last successfully contacted
her.  Id.  There is some dispute as to what exactly happened in
the ensuing conversation, but the parties agree that the
representative and Richburg discussed her debt and payment
situation, but that Richburg did not agree to pay anything at
that time.[1]  Def.'s Mem. Opp. Cert. at Ex. E; Pl.'s Cert. Reply
Ex. B at 155-56, 158-61.

        On September 15, 2006, Wolpoff sent a letter to
Richburg on behalf of Palisades demanding payment of $3,807.38
and giving her thirty days to dispute the debt.  Pl.'s Cert. Mem.

---

        [1]The primary disagreement between the parties concerns
whether Richburg acknowledged that she owed a debt to Palisades
and stated that she would eventually pay that debt back.
Palisades's records also show that Palisades representatives
spoke to Richburg on April 1, 2003.  Pl.'s Cert. Reply Ex. B at
161-64.  Again, Richburg and the defendants are at odds about
whether a Palisades' representative actually talked with her,
and, if so, what was said.

Ex. C.  Ten days later, Wolpoff filed a statement of claim in the Philadelphia Municipal Court to initiate the debt collection action against the plaintiff.  Id. Ex. D.  The statement of claim's total repayment demand was for $3,808.20, inclusive of all costs and fees, and it specified the principal as $1,683.46 with $1,706.05 in interest and $336.69 in attorneys' fees.  Id.

Prior to any contact with Richburg, Wolpoff's partnership had assigned Ronald S. Canter, the Director of Compliance, with the task of compiling a nationwide survey of the statutes of limitations relevant to its debt collection practice. Def. S.J. Mem. Ex. F ¶ 6.  Canter examined the applicable statutes, analyzed case law, and discussed legal theories for bringing debt collection claims with other attorneys.  Id. ¶ 7. Through this process Wolpoff created its national statutes of limitations chart, which its attorneys use as an aid in determining whether and when to bring actions against debtors. Id. Ex. G.  Wolpoff continues to review the applicable law and update the chart when changes to the law occur.  Id. Ex. F. ¶ 8.

On January 2, 2007, Richburg filed the original complaint alleging violations of the (1) Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), (2) Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Cons.

3

Stat. Ann. § 2270.1 _et_ _seq._ ("FCEUA"), (3) Pennsylvania Unfair

Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat.

Ann. § 201-1 _et_ _seq._ ("UTPCPL"), and (4) the Pennsylvania Loan

Interest and Protection Law, 41 Pa. Cons. Stat. Ann. § 101, _et_

_seq._ ("PLIPL").  Compl. ¶ 35-55.  The defendants answered on

February 16, 2007 and moved for judgment on the pleadings on July

11, 2007, challenging all of plaintiff's claims.  In our

September 7, 2007 Order, we granted defendants' motion in part,

dismissing the PLIPL claim.

As mentioned, Richburg now moves for class

certification, and the defendants move for summary judgment.

## II.  __Class Certification Standard__

The class action device is appropriate in cases where

it "saves the resources of both the courts and the parties by

permitting an issue potentially affecting every [class member] to

be litigated in an economical fashion under Rule 23." __Gen. Tel.__

__Co. of the Sw. v. Falcon__, 457 U.S. 147, 155 (1982) (__quoting__

__Califano v. Yamasaki__, 442 U.S. 682, 701 (1979)).  A party seeking

to certify an action for class litigation must first meet the

familiar four requirements of Fed. R. Civ. P. 23(a):

> (1) the class is so numerous that joinder of
> all members is impracticable, (2) there are

> questions of law or fact common to the class,
> (3) the claims or defenses of the
> representative parties are typical of the
> claims or defenses of the class, and (4) the
> representative parties will fairly and
> adequately protect the interests of the
> class.

The shorthand for these four requirements is numerosity, commonality, typicality, and adequacy.

The defendants contend that we should not certify a class because such a device and its champion are subject to sundry defenses that would require individualized fact inquiries for every class member.  Although there may be a core of plaintiff's suggested class that would be appropriate to certify, we cannot do so with the present class representative because she is both atypical and inadequate.

Since we will deny Richburg's motion for class certification on typicality and adequacy grounds, we do not reach the Rule 23(b)(3) factors of predominance and superiority.

## III.  **The Rule 23(a) Factors**

Defendants contend that the plaintiff has failed to establish all of the 23(a) factors except numerosity.  Though, as noted, we will deny class certification only because of typicality and adequacy, we will address each factor in order to

5

do our <u>Falcon</u> "rigorous analysis."  For the sake of efficiency we will consider typicality and adequacy together because the defendants' argument considers both factors together.

### A.  **Numerosity**

"No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must plaintiff allege the exact number or identity of class members."  <u>Cumberland Farms</u>, 120 F.R.D. at 645.  Plaintiff states that there are "in excess of 3,100 consumers" who potentially fall into the class.  Pl.'s Cert. Mem. at 11, Ex. A ¶¶ 47-57.  Courts are permitted to "accept common sense assumptions" about the numerosity requirement.  <u>In re Linerboard Antitrust Litig.</u>, 203 F.R.D. 197, 205 (E.D. Pa. 2001) (quoting <u>In re Cephalon Sec. Litig.</u>, 1998 WL 470160 at *2 (E.D. Pa. Aug. 12 1998)).  We find that there are enough class members that individual joinder of them would be impracticable.  The requirement of Rule 23(a)(1) is, therefore, satisfied.

### B.  **Commonality**

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  <u>Baby Neal v. Casey</u>, 43

F.3d 48, 56 (3d Cir. 1994).  This low bar recognizes that, even where factual differences may exist between putative class members, the class action may be a useful method of resolving those issues that are common to them all.  "Antitrust, price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy."  In re Sugar Indus. Antitrust Litig., 73 F.R.D. 322, 335 (E.D. Pa. 1976).

Here, Richburg and all the other putative class members would like to know whether a four- or six-year statute of limitations applies to debt collection actions on consumer debt, and, if the four year statute of limitations applies, would the defendants have a successful bona fide error defense.[2]  These questions suffice to satisfy the commonality requirement.

---

[2]Our Court of Appeals has recently obliged us to "include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment."  Wachtel v. Guardians Life Ins. Co., 453 F.3d 179, 184 (3d Cir. 2006). Although they did not formally saddle counsel with the responsibility of including such a summary in their memoranda to the district court, we believe that this makes sense.  It permits the parties the first attempt at shaping the relevant issues and frees us from rooting around memoranda searching for the class issues, claims, and defenses.  We also remind these litigants, and others to come, that boilerplate trial plans consisting of the obvious do not amount to the requisite summary.

C.  **Typicality and Adequacy**

"The typicality requirement is designed to align the
interests of the class and the class representatives so that the
latter will work to benefit the entire class through the pursuit
of their own goals."  Barnes v. Am. Tobacco Co., 161 F.3d 127,
141 (3d Cir. 1998).  In determining whether the named plaintiff's
claims are typical, we look at whether "the named plaintiff[s']
individual circumstances are markedly different or . . . the
legal theory upon which the claims are based differs from that
upon which the claims of other class members will perforce be
based."  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985)
(quoting Weiss v. York Hosp., 745 F.2d 786, 809 n.36 (3d Cir.
1984)).  Because typicality is concerned primarily with the
prevention of conflicts of interest between the named
plaintiff(s) and the other class members, "even relatively
pronounced factual differences will generally not preclude a
finding of typicality where there is a strong similarity of legal
theories."  Baby Neal, 43 F.3d at 58.

On the other hand, "[a]dequacy of representation
assures that the named plaintiffs' claims are not antagonistic to
the class and that the attorneys for the class representatives
are experienced and qualified to prosecute the claims on behalf

8

of the entire class."  Baby Neal, 43 F.3d at 55.  "The adequacy

of the class representative is dependant on satisfying two

factors:  1) that the plaintiffs' attorney is competent to

conduct a class action; and 2) that the class representatives do

not have interests antagonistic to the interests of the class."

Linerboard, 203 F.R.D. at 207.

        Defendants do not contest, and we can find no fault

with, the adequacy of plaintiff's counsel, but defendants do

argue that Richburg is not typical or adequate because she is

subject to unique defenses.  Def.'s Mem. Opp. Cert. at 13-16.

Questions regarding defenses uniquely available to the defendants

against the named plaintiff "bear on both the typicality and

adequacy of a class representative."  Beck v. Maximus, Inc., 457

F.3d 291, 296 (3d Cir. 2006).  The fear is that "the

representative's interests might not be aligned with those of the

class, and the representative might devote time and effort to the

defense at the expense of issues that are common and controlling

for the class."  Id. at 297.  Thus, to defeat class certification

"a defendant must show some degree of likelihood [that] a unique

defense will play a significant role at trial," i.e., the parties

will spend much of their time and effort leading up to and at

trial on issues that bear only on the specifics of the class

representative's particular claim, and will not illuminate,
clarify, or assist in determining the liability defendants have
to the class as a whole, and will distract the litigants from the
concerns of the class.  Id. at 300.  Of course, if we
"determine[] an asserted unique defense has no merit, the defense
will not preclude class certification."  Id.

        Defendants contend that Richburg acknowledged her debt
either during the February 27 or April 1, 2003 phone
conversations she had with Palisades's representatives.  Def.
Mem. Opp. Cert. at Ex. E; Pl.'s Cert. Reply Ex. B at 155-56, 158-
61.  Richburg argues that during the depositions of defendants'
representatives, they admitted that she did not agree to pay any
of the debt, and, therefore, there is no issue.  Id. at 11-13.
But a closer examination of the deposition testimony shows a real
disagreement as to whether Richburg did or did not agree to pay
her outstanding balance during the February 27, 2003 conversation
with Palisades representatives.  Id. D at 55-56.

        This dispute in the context of this case is no quibble.
Acknowledging the debt would toll the statute of limitations and
thus eliminate the underlying wrong which Richburg's FDCPA claim
seeks to remedy.  See Huntington Finance Corp. v. Newtown
Artesian Water Co., 659 A.2d 1052. 1054 (Pa. Super. 1995) ("A

10

clear, distinct and unequivocal acknowledgement of a debt as an existing obligation, such as is consistent with a promise to pay, is sufficient to toll the statute"). Acknowledgement is not a defense available to the defendants against the class as a whole. Obviously, some in the putative class would be subject to such a defense, but one cannot infer the efficacy of the acknowledgement defense on a class-wide basis from its efficacy against Richburg.

Richburg claims that the potential acknowledgement is a "minor issue." Pl.'s Cert. Reply at 13. We cannot see how this particular dispute will not be the focus of much attention in this litigation. Whether Richburg acknowledged her debt would certainly be an issue at trial. Resolving that issue will require significant preparation on the part of both parties, and ultimately the question is one of credibility, left for the jury, and one likely to focus the jury's attention away from the relevant class issues.

On this record, we cannot conclude that the asserted unique defense of acknowledgement lacks merit, and thus Richburg is not a typical or adequate class representative. Therefore, we cannot certify the class with Richburg as the class representative.

IV.  **Summary Judgment**[3]

Defendants make four arguments to support their motion:
(1) plaintiff's claims rely on a four-year statute of limitations
applying to the underlying debt collection action, but a six year
statute of limitations actually applies, (2) plaintiff

---

[3]Summary judgment is appropriate if there is no genuine
issue of material fact and the moving party is entitled to
judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling
on a motion for summary judgment, the Court must view the
evidence, and make all reasonable inferences from the evidence,
in the light most favorable to the nonmoving party.  Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a
factual issue arises which cannot be resolved without a
credibility determination, at this stage the Court must credit
the non-moving party's evidence over that presented by the moving
party.  Liberty Lobby, 477 U.S. at 255.
The moving party bears the initial burden of proving that
there is no genuine issue of material fact in dispute.
Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S.
574, 585 n.10 (1986). Once the moving party carries this burden,
the nonmoving party must "come forward with 'specific facts
showing there is a genuine issue for trial.'" Matsushita, 475
U.S.  at 587 (quoting Fed. R. Civ. P. 56(e)).  The non-moving
party must present something more than mere allegations, general
denials, vague statements, or suspicions.  Trap Rock Indus., Inc.
v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins.
Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982).  It
is not enough to discredit the moving party's evidence, the non-
moving party is required to "present affirmative evidence in
order to defeat a properly supported motion for summary
judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original).
A proper motion for summary judgment will not be defeated by
merely colorable or insignificantly probative evidence. See
Liberty Lobby, 477 U.S. at 249-50.  Also, If the non-moving party
has the burden of proof at trial, then that party must establish
the existence of each element on which it bears the burden.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

acknowledged the debt during a phone conversation with Palisades, thereby tolling the statute of limitations, (3) plaintiff has presented no evidence that defendants are liable under the FCEUA and UTPCPL, and (4) plaintiff's claims are subject to the bona fide error defense provided in the FDCPA and FCEUA.  We deal with each contention in turn.

### A.  **Statute of Limitations**

One of two statutes of limitations applies to the underlying debt collection action in this case.  Defendants argue that Pennsylvania's default six year statute of limitations applies because the underlying action is for "account stated." See 42 Pa. Con. Stat. Ann. § 5527(b).  On the other hand, Richburg contends that the standard four-year statute of limitations for contract actions applies because the underlying transaction involved a contract for the sale of goods.  Id. § 5525(a)(1).  If the defendants are correct, then none of the putative class members have a claim, making this question central to the entire litigation and an answer is necessary before anyone can contemplate resolution.  Since the Pennsylvania Supreme Court has not spoken on this particular question, we must engage in the perilous business of "predict[ing] how the state's highest court

would decide the issue were it confronted with the problem."

Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007)

(internal quotations omitted).

An "account stated" traditionally arises when two
parties, who engage in a series of transactions with one another,
come together to balance the credits and debits and fix upon a
total amount owed.  See David v. Veitscher Magnesitwerke Actien
Gesellshaft, 35 A.2d 346, 349 (Pa. 1944).  This final tally, once
assented to, becomes the "account stated," and any further cause
of action is based on this "account stated" rather than on any of
the underlying transactions .  Id.

The effect of an account stated is that

[t]he amount or balance so agreed upon
constitutes a new and independent cause of
action, superseding and merging the
antecedent causes of action represented by
the particular items. It is a liquidated
debt, as binding as if evidenced by a note,
bill or bond. Though there may be no express
promise to pay, yet from the very fact of
stating the account the law raises a promise
as obligatory as if expressed in writing, to
which the same legal incidents attach as if a
note or bill were given for the balance.

Telebase Systems, Inc. v. Gateway Comm'ns, Inc., 1988 WL 21845 at

*3 (E.D. Pa. March 2, 1988) (quoting 1 Am. Jur. 2d Accounts and

Accounting § 21 at 396-97 (1962)).

14

Focusing on the description of an "account stated" as a "new and independent cause of action," defendants argue that only Pennsylvania's default six-year statute of limitations can apply because no other relevant provision covers an action for "account stated". Def.'s S.J. Mem. at 7-11. But an action for "account stated" still sounds in contract just like an action for quasi-contract or unjust enrichment, and is no more "independent" from contract actions generally than a negligence action is independent of tort actions generally. The only thing that this "account stated" cause of action is "new and independent" from is the specific contract action(s) one could bring on the underlying transactions.

Moreover, an "account stated" is just a variety of contract. It is an agreement between debtors and creditors. The parties agree to a consolidated statement of debt, give up their right to bring suit on any of the underlying debts, and create a duty to pay. Restatement (Second) of Contracts § 282 (1981); Restatement of Contracts § 422(1) (1932). The "account stated" is "a debt as a matter of contract implied by law. It is to be considered as one debt, and a recovery may be had upon it without regard to the items which compose it." 29 Williston on Contracts § 73:58 (2007). Pennsylvania law provides a four-year statute of

15

limitations for "contracts implied in law."  42 Pa. Cons. Stat.
Ann. § 5525(a)(4).  Therefore, whether the underlying action on
Richburg's debt is described as an "account stated" or a contract
for the sale of goods, it is only subject to Pennsylvania's four-
year statute of limitations.

   Furthermore, if we ignore the words "account stated"
and examine the particular underlying transaction here, the fact
that this action sounds in contract becomes pellucid.  Suppose
Richburg bought a computer from Gateway and signed a credit
agreement (which she denies, and defendants fail to present a
signed credit agreement).  Any agreement to provide a revolving
line of credit, whether it be to Janice Richburg or to a major
corporation, is at its core a contract to borrow money at a
stated interest rate and with an anticipated payment schedule.
If, for example, Bank of America sued Intel for such a revolving
line of credit, neither of the parties in that action would
venture that the applicable statute of limitations was something
other than what applies to contract actions.  That credit
agreement would form the basis for any cause of action, and any
such action would, in Pennsylvania, be subject to a four-year
statute of limitations.  Id. § 5525(a)(7).  We see no reason why
this should not hold true for a credit agreement between Janice

Richburg and Gateway.

### B.   __Acknowledgement of Debt__

Defendants argue that even if the four-year statute of
limitations applies they have not violated any statute because
during the phone conversations either on February 27, 2003 or
April 1, 2003, Richburg acknowledged her debt, and this tolled
the statute of limitations.  Def.'s S.J. Mem. at 11-12.  Richburg
denies that she conveyed this to Palisades during their
conversations on those dates.  Pl.'s Mem. Opp. S.J. at 13-16.
Whether the acknowledgement defense applies hinges on whose
version of events one accepts, and resolving such a question
requires making credibility determinations that are left to the
jury.

### C.   __FCEUA and UTPCPL Claim__s

Defendants also contend that they did not violate the
FCEUA because Wolpoff was not acting as a "debt collector" under
the FCEUA when it contacted Richburg.  Under the FCEUA, an
attorney can be a debt collector for the purposes of the statute
"except in connection with the filing or service of pleadings or
discovery or the prosecution of a lawsuit to reduce a debt to
judgment."  73 Pa. Cons. Stat. Ann. § 2270.3.  The only two

contacts Wolpoff had with Richburg were the September 15, 2006
demand letter and the filing of the statement of claim.  Pl.'s
Cert. Mem. Ex. C, D.  Defendants contend that the FCEUA
litigation exception covers both of those instances, and thus
neither Wolpoff nor Palisades can be liable under the FCEUA
because Wolpoff has committed no direct violation of the statute
and all of Palisades liability is derivative of Wolpoff's.
Def.'s S.J. Mem. at 12-14.

Filing the statement of claim could fall within the
lawyers' exception to the FCEUA.  We did not dismiss this claim
when defendants filed for judgment on the pleadings because the
statement of claim stated that the defendants had made repeated
demands for payment, any of which may have violated the FCEUA.
Sept. 7, 2007 Order ¶¶ (t)-(v).  We would indeed grant summary
judgment to the defendants on the FCEUA claim were the only basis
for Richburg's claim against them the statement of claim, but it
is not.

The September 15, 2007 letter by its own terms states
"this is an attempt by a debt collector to collect a debt."
Pl.'s Cert. Mem. Ex. C.  Furthermore, nowhere in the letter does
it make reference to impending legal action or suggest that it is
part of an attempt to prosecute a lawsuit.  Thus, it does not

fall within the ambit of the litigation exception to the FCEAU. Thus, the September 15, 2007 letter creates FCEAU liability for Wolpoff, and, in turn, Palisades, because Wolpoff is Palisades's agent.  Furthermore, the letter establishes UTPCPL liability because a violation of the FCEAU is also a violation of the UTPCPL.  Therefore, we cannot grant summary judgment to defendants on either of these claims.

We also note that regardless of whether the litigation exception covers Wolpoff's contacts with Richburg, Palisades has direct liability under the FCEUA based on the statement of claim. Defendants argue that liability only attaches to Palisades because Wolpoff was its agent and Wolpoff filed the statement of claim.  But the gravamen of Richburg's complaint is not Wolpoff's physical act of filing papers in the courthouse -- which could be attributed to Palisades through its principal-agent relationship with Wolpoff -- but that Palisades brought an action to collect a debt against her when it could not.  It is Palisades's name in the caption on the statement of claim, and it is Palisades that would recover if successful.

### D.  **Bona Fide Error Defense**

The defendants argue that they are not liable because Richburg's claims are subject to the bona fide error defense found in the FDCPA and FCEUA.  <u>See</u> 15 U.S.C. § 1692k(c); 73 Pa. Cons. Stat. Ann. § 2270.5(d).  Since the two versions of the defense are the same in element and effect, we will refer only to the FDCPA for the sake of simplicity.[4]

Courts are divided about whether the bona fide error defense applies to mistakes of law or is limited to clerical errors.  <u>See</u> <u>Johnson v. Riddle</u>, 305 F.3d 1107, 1121 n.14 (10th Cir. 2002) (collecting cases).  As yet our Court of Appeals has not ruled on whether the bona fide error defense applies to mistakes of law, so we must seek our guidance outside this Circuit.

---

[4]Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).

Under the FCEUA, "[a] debt collector or creditor may not be held liable in any action for a violation of this act if the debt collector or creditor shows by a preponderance of the evidence that the violation was both not intentional [and] resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 73 Pa. Cons. Stat. Ann. § 2270.5(d).

Most of the cases holding that the defense does not apply to mistakes of law rely on interpretations of a parallel bona fide error provision in the Truth in Lending Act ("TILA"). Neilson v. Dickerson, 307 F.3d 623, 640-41 (7th Cir. 2002); see also Picht v. Jon R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001) (holding no bona fide error defense for mistakes of law based on Baker v. G.C. Servs. Corp., 677 F.2d 775, 779 (9th Cir. 1982) (applying the limitations on TILA's bona fide error defense to the FDCPA because "[s]ection 1692k(c) of the [FDCPA] is nearly identical to the bona fide error defense section under [TILA]") (emphasis added)); Piples v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989) (relying on Baker).

But the TILA's bona fide defense specifically excludes mistakes of law.  15 U.S.C. 1640(c) ("an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error").  On the other hand, the FDCPA's bona fide error defense contains no specific exclusions or inclusions. See 15 U.S.C. 1692k(c).  We can see no reason to import language from a different, albeit related, statute to further constrict an already narrow defense.  Thus, we side with a "growing minority of courts" that find mistakes of law can satisfy the FDCPA's bona fide error defense.  Johnson, 305 F.3d at 1121.

To establish the bona fide error defense a defendant has to establish (1) the violation of the FDCPA was unintentional, (2) the FDCPA violation was due to an underlying bona fide error, and (3) the bona fide error occurred despite "maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c); <u>see</u> <u>also</u> <u>Beck</u>, 457 F.3d at 297-98 (citing <u>Johnson v. Riddle</u>, 443 F.3d 723, 727-28 (10th Cir. 2006) and <u>Kort v. Diversified Collection Services, Inc.</u>, 394 F.3d 530, 537 (7th Cir. 2005)).

The first prong of this defense is a subjective test that requires a credibility determination concerning the debt collector's assertions that the ensuing FDCPA violation was unintentional.  <u>Johnson</u>, 443 F.3d at 728-29.  The defendants deny intentionally violating the FDCPA, and Richburg does not directly contest this part of the defense.  Def.'s Mem. Ex. F; Pl.'s Mem. at 23-26.  Instead, the focus of their arguments is on the second and third prongs of the defense, which we turn to now.

These two prongs of this test are objective ones that require the defendants to establish that the underlying error leading to the FDCPA violation was bona fide and that the defendants maintained reasonable procedures designed to avoid such an error.  <u>Johnson</u>, 443 F.3d at 729.  When the underlying

22

bona fide error involves a mistake of law, then "whether the debt collector's mistake was bona fide will often turn on the debt collector's due diligence practices." Id. In such cases, the second and third prongs merge with "one inquiry driv[ing] the other." Id.

To assess whether the defendants' procedures satisfy the second and third prongs obliges us to inquire whether any precautions were actually implemented and whether such precautions "were reasonably adapted to avoid the specific error at issue." Id. (internal quotations omitted). Since the defendants demonstrate, and Richburg does not contest, that the defendants developed a nationwide survey of statutes of limitations to aid attorneys in determining the applicable law, the defendants have established that precautions were implemented. Thus, the focus of our inquiry narrows further to whether, as a matter of law, the statute of limitations survey was reasonably adapted to avoid the error that occurred.

The facts of Kort and Johnson are particularly instructive here. In Kort, the plaintiff received a form letter from the defendant collection agency that contained an improper calculation of the amount of time provided to pay back the plaintiff's student loan debt. Kort, 394 F.3d at 535. The

23

defendant adopted verbatim the form issued by the United States Department of Education, the relevant regulating body, and it was the DOE that had miscalculated the allotted repayment time that formed the basis of the plaintiff's complaint.  Id. at 533-34.

The Seventh Circuit held that the defendant had satisfied the second and third prongs of the bona fide error defense as a matter of law.  Id. at 539.  First, the error was clearly bona fide since the DOE, and not the defendant, computed the time for repayment improperly.  Id. at 538.  Second, the defendant's "complete reliance on the DOE form demonstrate[d] [defendant's] reasonable effort to comply with the statute."  Id. Thus, a debt collector adopting a regulator's interpretation of the law is a procedure reasonably adapted to avoid an error as to that point of law.

In Johnson, the plaintiff kited a check for $2.46 at her local 7-Eleven.  Johnson, 443 F.3d at 725.  The defendant, an attorney retained by the aggrieved convenience store's parent corporation, brought a shoplifting action against the plaintiff under Utah law seeking to recover the face value of the check plus $250 in statutory damages.[5]  Id.  After settling, the

_____

[5]Under Utah law an action for a dishonored check allows for recovery of the face value of the check plus $15, here totalling

plaintiff promptly filed a class action against the defendant
alleging that by suing her for shoplifting, when he actually
sought to collect a debt, defendant violated the FDCPA.  Id.

Several years before bringing the shoplifting suit, the
defendant's law firm had researched whether Utah's shoplifting
statute covered kited checks, and came to the qualified
conclusion that state law did not preclude such an action.  Id.
at 725-26.  Shortly thereafter, the defendant filed a test case
in Utah state court that resulted in an unpublished disposition
and default judgment awarding statutory shoplifting penalties.
Id. at 726.

The Tenth Circuit held that the district court
improperly granted summary judgment to the defendants on the bona
fide error defense.  Id. at 732.  The panel concluded that a
reasonable jury could find that the defendant's procedures were
not reasonably adapted to avoid the error.  Id. at 730.
Specifically, a jury could find that the defendant's opinion
letter was insufficient to warrant the protection of the bona
fide error defense because the defendant had heavily qualified

---

$17.46, which was also the amount for which defendant and
plaintiff settled.  Johnson, 443 F.3d at 725.

all his conclusions and failed to engage in an <u>Erie</u> analysis.[6]
<u>Id.</u>  The Tenth Circuit panel also noted that the jury could also
have found that the defendant's test case, which was <u>ex</u> <u>parte</u>,
involved a single action and was not established as mirroring the
facts of suits against the class of debtors to which Johnson
belonged, and was "either a sham to set up the bona fide error
defense or a true judicial scrutiny of unsettled practices."  <u>Id.</u>
at 731.  Thus, when debt collection firms and their lawyers
create and rely on their own expansive statutory interpretations
that theoretically would have the effect of insulating them from
liability under the FDCPA, the Tenth Circuit held that the jury
should determine whether these efforts amount to genuine
precautions or are purely self-serving.

     Whether Wolpoff's error was bona fide and its
procedures reasonable thus remains a question for the jury.
Wolpoff's error in this case consists of determining whether the
six-year rather than four-year statute of limitations applied to
actions to recover consumer credit card debt.  Wolpoff argues

-------

     [6]The Tenth Circuit, after conducting the requisite <u>Erie</u>
analysis, came to the "unmistakably clear and unambiguous
conclusion [that] Utah law does not permit a debt collector to
claim shoplifting penalties for an ordinary dishonored check."
<u>Johnson</u>, 443 F.3d at 731 n.4 (internal quotations omitted).

that the process of developing and maintaining its nationwide
statute of limitations chart is a procedure reasonably adapted to
avoid the error of applying the wrong statute of limitations to a
given action.  Pl.'s S.J. Mem. at 17.  Wolpoff has not adopted a
regulator's -- or, for that matter, any third party's --
interpretation of the law that would permit us to find the
statute of limitations survey constitutes a reasonable procedure
as a matter of law.  Wolpoff attempts to bolster its position by
presenting a Pennsylvania Court of Common Pleas opinion where the
court held that the "account stated" theory applied to actions to
recover a debt on a credit card.  Def. S.J. Mem. Ex. H.  Nowhere
does this decision discuss what statute of limitations applies to
such an action.  Moreover, regardless of the nature of the
action, we have debunked the notion that an "account stated" is
subject to anything other than the four-year statute of
limitations.

        Wolpoff relies exclusively on its own interpretation
and efforts in generating the statute of limitations charts and
filing its debt collection actions.  Much like the opinion letter
offered by the Johnson defendants, which was also based on
mistaken interpretations of state law, a reasonable jury could
find that the measures the defendants took were insufficient.

27

Thus, we cannot grant summary judgment to defendants and must leave this central issue for resolution before the jury.

BY THE COURT:

/s/ Stewart Dalzell, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANICE A. RICHBURG            :        CIVIL ACTION
                              :
        v.                    :
                              :
PALISADES COLLECTION LLC,     :
et al.                        :        NO. 07-7

<u>ORDER</u>

AND NOW, this 28th day of January, 2008, upon consideration of plaintiff's motion to certify class (docket entry #24), the response and reply, and the defendants' motion for summary judgment (docket entry #28) with its response, reply, and sur-reply, it is hereby ORDERED that:

1.   Plaintiff's motion for leave to file a sur-reply is GRANTED;

2.   Plaintiff's motion to certify class is DENIED;

3.   Defendants' motion for summary judgment is DENIED;

4.   Counsel shall CONVENE in Chambers (Room 10613) for a status conference on February 5, 2008 at 2:30 p.m.; and

5.   Further scheduling shall ABIDE the status conference.

BY THE COURT:


/s/ Stewart Dalzell, J.